Curia, per Wardlaw, J.
The questions in this case arise under those sections of the Ordinary’s Act of 1839, (11 Stat. 44,) which re-enact the Act of 1824, (6 Stat. 248,) intended to save the delay and expense of the usual proceedings in equity, by giving to the Judges of the courts of ordinary jurisdiction to make partition of the real estates of deceased persons, by sale or division, in certain cases. The title and preamble of the Act of 1824, which are omitted in the Act of 1839, afford some aid in the construction of these statutes.
The Judge’s report states that “ the ordinary ordered the land, to be sold” — meaning the whole land of which partition was claimed. It has been stated in argument, and so it appears from what seems a copy of the ordinary’s order which has been appended to the report, that the ordinary, disavowing his right to examine into a question of title, was of opinion that the applicant is entitled to one half of the real estate described in the summons in partition, and ordered that “ the same, to wit, one half of the lands described,” should be sold.
If this be a true copy, the order does not positively decide whether the proceeds of sale shall be divided amongst the parties, (according to the several interests set out in the application, or in some other proportion,) or whether they *596 shall be paid entirely to the applicant; although the latter seems to be its meaning.
In any view the order was irregular, amounting only to an ineffective decision of the question which the ordinary thought he could not decide, but not containing such a decree as he was required to make. If an undivided moiety only of the land was subject to partition under the Acts which have been cited, perhaps, although shares of that moiety could not have been allotted in severalty, the moiety might have been sold and the proceeds divided, as was done in the case of Brennan vs. Hill, (a) But if the whole land was subject to partition between the parties, a sale of an undivided moiety only, and division of the proceeds of that, would be' an imperfect partition, unauthorized by the Acts ; and a sale of the whole in successive undivided moieties would be equally unauthorized, and in most instances would be injurious to all parties. If it was intended that only the undivided share of the applicant should be sold, and the proceeds be her’s entirely, the purchaser taking the risk of her title and acquiring only her claim as a tenant in common, then the order was idle. The applicant herself, if sui juris, could have made such a sale; and if she were an infant or under any disability* the ordinary had no power to make it for her. To suppose that under the order a purchaser would acquire a title to an undivided share, which no party to the proceedings could dispute, would be to give the effect of a judgment to a mere opinion, unaccompanied by a judgment; for the sale of a share cannot be held to be the partition which the ordinary has jurisdiction to decree.
Taking the order, however, to' have been such as the circuit Judge understood it to be and has reported, the questions are,—
1. Did the ordinary’s disavowal of an intention to interfere with the question of title, prevent the decree from being conclusive as to the rights of parties ?
2. Was the ordinary’s jurisdiction ousted by the assertion of an adverse title by one of the parties ?
3. What should be the course of proceeding in an appeal upon the question of title ?
*597 1st. The proceeding before the ordinary is a suit, as is the similar proceeding in the Common PJeas. Rice’s Law-Rep. 232. If a sale be made, the purchaser acquires all the title which the parties had in the land, and his money is distributed amongst them, according to their several interests ascertained and fixed by the decree. If an actual division be made, their shares are allotted to the parties in severalty, and a confirmation of the return of th,e commissioners who have made the division, is a decree that, as between themselves, the parties hold according to the return. Before sale or division, the summons directed to the persons with whom the applicant claims to hold in common, requires them “ to shew cause why the land in question should not be sold or divided and sale or division can be ordered only “ when, in the opinion of the ordinary, there shall be no good cause shewn” to the contrary. If the land did not belong to the deceased person under whom the applicant claims — if the applicant’s right to a share never existed or has been divested — if for one of these causes, or any other cause, the land is not subject to partition at all between the applicant and the persons summoned, or not subject in the mode or in the shares proposed by the applicant, the cause being made to appear will arrest or vary the partition. No stronger cause against a partition could be shewn, than an exclusive title in one of the persons summoned. If this, or any other sufficient cause which might have been shewn, be neglected by a person summoned, where the applicant makes those circumstances appear which are essential to the jurisdiction of the ordinary, the rule is applicable to this which necessarily applies to all other judicial proceedings — matters which might have been investigated, must be taken to have been adjudicated no less than those which were investigated. A Judge’s mistake as to the effect of his decision, apart from fraud or misleading of parties, does not impair the force of his decision upon all matters which are necessarily involved in it. The conclusion that the land should be sold, in regular course necessarily involved an adjudication of the rights of all parties before the ordinary, and no expression of his opinion or purpose would prevent *598 his decree from being conclusive of those rights. That which is subject to partition between two, cannot be the exclusive property of one of the two.
2d. It is plain that the ordinary’s power is not, by the Acts which have been cited, made to rest upon the consent of parties, for he is required to proceed in cases where infants and married women are parties, and, by a formal consent entered, may bind absent persons. He is required to form an opinion concerning the causes which may be shewn against a partition which is applied for, and to act upon that opinion. No distinction is made between adverse title set up by a party, and other causes. If a serious assertion of title should stop him, then must a mere pretence too — for he only can judge whether a claim be one or the other. He is considered to be competent to decide all questions of law and fact which, in the cases within his jurisdiction, are involved in the main inquiries, shall partition be made between these parties ? — how ?— and in what proportions ? The title to land is necessarily involved in every such case, whether the decision be made upon default or after contest had ; — whether with or without consent; unless the parties be every one sui juris, and all consent in writing — in which case the aid of the ordinary need not be invoked. Can á freeman, then, be thus disseised of his freehold without the judgment of his peers, and yet the trial by jury be preserved as it was used in this State before the adoption of our constitution? Long before the adoption of the constitution, the partition of lands, by sale or actual division, by consent or in invitum, was, within the equity jurisdiction, familiarly exercised in this State. (See Pell and Ball, 1 Rich. Eq. 384.) When a Judge of the Court of Equity was required incidentally to decide upon questions of title, he, according to his discretion, determined for himself or sent an issue to be tried at law. The Act of 1824 transferred cases of a limited amount, within this branch of equity jurisdiction, to the courts of ordinary, thus making them, as to such matters, inferior courts of equity; and by the right of appeal to the Court of Common Pleas, a trial by jury was saved to any party who desired it.
*599 3d. The 13th sec. of the Ordinary’s Act of 1839 renders more plain and effective the right of appeal which was provided by the Act of 1824. The party appealing in any such case, having filed a suggestion setting out the decree of the ordinary and the grounds of appeal, “ such issue shall be made up in law or fact as may be necessary or proper, and shall be tried according to the usage and practice of the Court of Common Pleas.”
In the case which is before us, (if a sale of the whole land was ordered,) the grounds of appeal should have traversed the seizin of the deceased person, the applicant’s right to any share, or some other matter which it was essential for the applicant to have shewn, or should have alleged some sufficient matter of avoidance; and an issue of fact, to be tried by the jury, or of law for the court, should have been made. _ As, however, the practice has been unsettled, and the exact nature of the suggestion which was filed does not now appear, the order dismissing the appeal is set aside, and this court orders as follows :—
If the ordinary has decreed a sale of the whole lands, let the appellant have leave to amend his suggestion, if he will, in time to have the proper issues made and presented for trial at the next term of the circuit court.
But if the ordinary has ordered a sale of only the undivided share of the applicant, let his decree be set aside, and the applicant be at liberty to proceed in the court of ordinary or elsewhere, as she may be advised.
Richardson, O’Neall, Evans and Frost, JJ. concurred.

 The case of Brennan vs. Hill was decided in Columbia, in May, 1838. The opinion of the court is as follows .
Butler, J. The first ground of appeal is, that the ordinary had no jurisdiction to order the sale of any portion of the land in controversy, — as the joint tenancy was created by deed; and that one oí the original joint tenants is now living. It may be remarked, that the surviving joint tenant*or his vendee, was interested with others, who were plaintiffs in partition, in the distributive shares of the two tenants, John Hill and E. M. Hill, who died intestate; and the question is now, had the ordinary authority, under the Act of 1824, to make an order for the sale of these shares, for the purpose of division among *600 those interested; and thereby to vest the purchaser with title to the extent of the interest of the deceased tenants, and to make him a tenant in common with the surviving tenant ? If this proposition cannot be maintained, the plaintiff took nothing under his deed from the sheriff; and must not only fail in this action, but has no legal interest in the land. This depends on the construction of the Act of 1824, giving power to the ordinary to divide and sell real estate for partition. By this Act, it is said, the Judges of the court of ordinary “ shall have full power and authority, upon the application of any person or persons interested therein, to make sale or division of the real estate of any person or persons who may have died or who shall hereafter die intestate or leaving a will."
Then, 1st. Did not John and E. M. Hill die intestate, leaving real estate ? 2d. Did not the ordinary take jurisdiction upon the application of those interested therein ? 3d. Did he not order it for sale ; upon the ground that in his judgment it could not well be divided?
It seems, from the obvious meaning and intention of the Act, that he had authority to do so; and from his proceeding, it is apparent that he has done so ; giving the sheriff the right to sell at least two thirds of the tract of land now in dispute. The defendant’s first ground cannot therefore be maintained.
The sheriff has undertaken to convey the entire tract of one hundred acres to the plaintiff) upon the assumption that he had full power to sell the same, by the order of the ordinary. Supposing that the order was full enough to justify the construction put on it by the sheriff, it may very well be questioned whether the ordinary had the right to sell the one third held, under the deed, by the surviving tenant or his vendee. Without the vendee or tenant had given his express and written consent for the sale of this one third, it is evident that the ordinary had no authority to order it to be sold. It is sufficient to say, that no such consent has been or perhaps can be proved. This question, however, becomes of no importance in this case, as the court is of opinion that the order does not authorize the sheriff to sell more than John and E. M. Hill’s interest and estate in the land, to wit, two thirds. The language of the order is, “ that the real estate, of which John Hill deceased, and Mobly Hill, deceased, were tenants in common,” should be sold. Giving these words their technical meaning, without regard to what might be inferred to have been the intention of the ordinary, from the latter part of the order, which is by no means explicit, the conclusion of the court cannot be disputed; and such is the construction to be put upon them. So that, properly speaking, the sheriff sold but two thirds of the entire tract of land ; and the deed to the plaintiff cannot be regarded as good for any more. From this, it would follow, that Carr is in (by his tenant) as tenant in common with the plaintiff, which would be a position fatal to the action, upon the familiar principle, that one tenant in common cannot maintain an action against his cotenant; unless the cotenant be guilty of an ouster. The only question which is therefore left open in this case, is this, — does the present defendant, Richard Hill, hold possession of the land as tenant of Carr 1 — and if so, has he been *601 guilty of such an ouster as would subject him to the liability of this action ? If Hill is not the tenant of Carr, he must he regarded, as any other stranger in possession, amenable to any one tenant for a trespass; or if, being a tenant, he has been guilty of an actual ouster, he would he held liable to this action. If this state of facts does not exist, — and I doubt whether it does, — the plaintiff had as well take a non-suit, and go into equity for a fair partition of the land. As the court is unwilling to pre-judge the question, a new trial is granted. Sustaining, however, the principle of defendant’s second ground of appeal.
Gantt, Richardson, O’Neall and Evans, JJ. concurred.